NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALEXANDER G., | ) |
| | ) Supreme Court No. S-17936 |
| Appellant, | ) |
| | ) Superior Court No. 4FA-18-00069 CN |
| v. | ) |
| | ) MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S SERVICES, | ) No. 1851 – September 15, 2021 |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Olena Kalytiak Davis, Anchorage, for Appellant. Aisha Tinker Bray, Assistant Attorney General, Fairbanks, and Treg R. Taylor, Attorney General, Juneau, for Appellee. Laura Hartz, Assistant Public Advocate, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Winfree, Chief Justice, Maassen, Carney, and Borghesan, Justices.

---

\* Entered under Alaska Appellate Rule 214.

## I. INTRODUCTION

The Office of Children's Services (OCS) took emergency custody of the newborn daughter of a couple with a long history of involvement in services to address the mistreatment of their children. After two years of providing additional services to the parents, OCS petitioned to terminate parental rights. The superior court terminated their rights, relying on OCS's past and recent efforts and the parents' failure to remedy their conduct despite being offered many rehabilitative services. The father appeals; we affirm the termination of his parental rights.

## II. FACTS AND PROCEEDINGS

In 2018 OCS took emergency custody of Lara, the newborn daughter of Alexander and Julianna G.[1] Lara was born with a cleft palate. Because both Alexander and Julianna had long histories of OCS involvement due to their neglect and failure to properly care for other children, OCS asked the court to award it custody of Lara. The petition noted concern about the family's lack of suitable housing as well as the parents' inability to care for Lara's special medical needs.

The superior court had terminated both parents' rights to two of their children in 2015 based upon the parents' neglect and the substantial risk that the children would suffer additional physical harm due to their parents' inability to care for them and the parents' "extreme lack of motivation" to improve their parenting. The court's lengthy termination order detailed OCS's efforts over the course of two years to provide Alexander and Julianna the support and education they needed to regain custody of their children. OCS provided clothing for the children; repeatedly referred Alexander and Julianna to parenting classes from which they were discharged for failure to participate; repeatedly attempted to help them find stable housing; referred them to the Division of

---

[1] We use pseudonyms to protect the family's privacy.

Vocational Rehabilitation to increase their job skills and employment prospects; arranged mental health and parenting risk assessments; and provided them bus passes and tokens — at times hand-delivering these to the parents — to ensure that they were able to attend appointments and visits. OCS's efforts "were not effective" because the parents "exhibited an extreme lack of motivation" and remained "unable to parent full time without help from other people."

From the spring of 2018 through the termination trial in September 2020, OCS again worked with both parents to help them reunify with Lara. In May 2019 both parents stipulated that Lara was in need of aid due to their neglect. OCS referred Alexander to a variety of services. OCS arranged for a parental risk assessment, individual counseling, and parenting classes; offered transportation to the various appointments; scheduled visitation; and offered housing assistance. OCS arranged one-on-one parenting coaching for him, but the coach discharged Alexander because of his sporadic attendance. OCS then arranged for Alexander to participate in another parenting program. After Alexander was discharged from individual counseling for lack of progress, OCS referred him to a new counselor. The professionals that worked with Alexander consistently reported to OCS that he either was not participating in their services or was unwilling to address problems they identified.

In March 2020 OCS filed a petition to terminate Alexander's and Julianna's parental rights to Lara. Following a trial at which each of the professionals who had offered services to the parents testified, the superior court terminated both parents' rights. The court found that Lara was in need of aid based on the risk that she would suffer physical injury and neglect if she were returned to her parents' care, that OCS had made reasonable efforts to reunite Lara with her parents, that both parents had failed to remedy the conduct that placed Lara at risk, and that it was in Lara's best interests to terminate Alexander's and Julianna's parental rights.

The court relied on Alexander's history of poor parenting and his lack of motivation to change his behavior in reaching its decision. The court specifically referred to the 2015 order terminating parental rights to the two older children and noted the amount of services and support OCS provided to him both in that case and in Lara's case. The court concluded that Alexander continued to lack interest in improving his ability to be a safe parent, and it terminated his rights.

Alexander appeals, arguing that the court erred by finding that Lara was in need of aid, that he had failed to remedy the conduct that had led to OCS being awarded custody, that OCS had made reasonable efforts to reunify him with Lara, and that it was in Lara's best interests to terminate his parental rights.[2]

## III.    STANDARD OF REVIEW

"In child in need of aid (CINA) cases, we review the superior court's factual findings for clear error."[3] "Whether a child is in need of aid, whether a parent has remedied the conditions that placed the child in need of aid, and whether termination is in a child's best interests are factual determinations."[4] A factual finding is clearly erroneous if our review of the entire record leaves us with "a definite and firm conviction

---

[2]    Julianna has not appealed the termination of her parental rights.

[3]    *Charles S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 780, 788 (Alaska 2019) (citing *Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 290 P.3d 421, 427 (Alaska 2012)).

[4]    *Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 310 P.3d 943, 948-49 (Alaska 2013) (footnotes omitted).

that a mistake has been made."[5] "[W]e will not reweigh evidence when the record provides clear support for the trial court's ruling."[6]

"Whether OCS made reasonable efforts to reunify the family is a mixed question of law and fact."[7] We review questions of law de novo.[8]

## IV. DISCUSSION

### A. The Superior Court Did Not Clearly Err By Finding That Lara Was A Child In Need of Aid.

The superior court found that Lara remained a child in need of aid on two bases: that she was at substantial risk of physical harm[9] and that her parents had neglected other children in the same household.[10] Alexander argues that because OCS took custody of Lara soon after she was born, she had not suffered either harm or neglect. He also claims that it was error for the court to rely on the findings contained in the 2015 order terminating his rights to other children.

But the superior court's order and our case law are clear that OCS "is not required to wait to intervene until a child has suffered actual harm."[11] It is equally clear

---

[5] *Annette H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 450 P.3d 259, 265 (Alaska 2019) (quoting *Claudio P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 309 P.3d 860, 863 (Alaska 2013)).

[6] *Id.* (alteration in original) (quoting *Claudio P.*, 309 P.3d at 863).

[7] *Id.* (quoting *Sherman B.*, 290 P.3d at 428).

[8] *Id.*

[9] AS 47.10.011(6).

[10] AS 47.10.011(9).

[11] *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 79 P.3d 50, 55 (Alaska 2003).

that the superior court may "rely on a parent's documented history of conduct as a predictor of future behavior."[12] We have held that "[t]his is particularly true in light of [a parent's] refusal to improve [his] conduct by engaging in counseling" or other services.[13] The 2015 order documented the harm suffered by Alexander's son when he and Julianna failed to meet that child's medical needs. Lara's cleft palate required that she receive more care than most children. The superior court did not err by relying upon the harm caused to the older children to conclude that Lara's medical condition placed her at substantial risk of harm if she were in Alexander's care.[14]

**B. The Superior Court Did Not Clearly Err By Finding That Alexander Failed To Remedy The Conduct Or Conditions That Placed Lara At Substantial Risk Of Harm.**

Alexander argues that the reasons OCS was awarded custody of Lara when she was born were her family's lack of suitable housing and her cleft palate, and that both had been corrected by the time of the termination trial. Alexander overlooks not only the multiple CINA bases listed in OCS's petition for emergency custody and the superior court's clarification that "[a] housing issue in no way, shape, or form inform[ed]

---

[12] *Sherry R. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 74 P.3d 896, 903 (Alaska 2003).

[13] *Joy B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 382 P.3d 1154, 1164 (Alaska 2016).

[14] Alexander also disputes the superior court's finding that he neglected other children in Lara's household (the children who had been the subjects of the 2015 termination order), arguing that "there were no children living in the household into which Lara would have moved." Because we affirm the superior court's finding that Lara remained in need of aid due to a substantial risk of physical harm, we do not address Alexander's challenge to the superior court's neglect finding. *See Annette H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 450 P.3d 259, 265-66 (Alaska 2019) ("We need not consider each of the grounds alleged if we determine that the record supports any one of the superior court's child in need of aid findings.").

[its] decision in this," but also the termination petition's allegation that Lara remained in need of aid on each of six statutory bases: substantial risk of physical harm, risk of sexual abuse, exposure to domestic violence, neglect, parental substance abuse, and parental mental illness.[15]

The services OCS provided Alexander were directed at improving his ability to be a safe parent; the services provided before 2015 had the same purpose. Multiple professionals who provided services to Alexander testified that he had not engaged and had not improved — as the superior court noted in 2015. The superior court found that "[Alexander] in particular . . . has given up." The court concluded that "[r]eally nothing regarding [Lara] has changed since the extensive and intensive services were provided in the order that was referenced and authored by [the court in 2015]." It was not clear error to find that Alexander failed to remedy the conduct that made Lara in need of aid.

### C. The Superior Court Did Not Err When It Determined That OCS Made Reasonable Efforts To Reunify Lara With Her Family.

Alexander argues that OCS did not make reasonable efforts to reunify him with Lara. Five professionals, as well as an OCS caseworker, testified about the efforts they made — to no avail — to engage Alexander in their services. As had been true in the earlier case, these services were specifically tailored to improving Alexander's ability to become a safe parent. And as was true in the earlier case, Alexander failed to engage in the offered services.

Contrary to Alexander's claim that OCS's efforts were not reasonable, OCS's efforts over many years to reunite Alexander with his children far surpassed the

---

[15] *See* AS 47.10.011 (listing bases for finding child in need of aid).

threshold that we have previously approved as reasonable.[16]  In fact, OCS's efforts toward reunifying Alexander with his children might well satisfy the higher active efforts standard required in Indian Child Welfare Act (ICWA) cases.[17]  The superior court did not err by finding that OCS made reasonable efforts.

**D.**    **The Superior Court Did Not Err When It Determined That Termination Of Parental Rights Was In Lara's Best Interests**.

The superior court found that it was in Lara's best interests to terminate Alexander's parental rights and allow Lara to "find permanency in her [foster] home with her . . . grandparents."  The court "note[d] that there has been almost a decade of services provided by OCS" to Alexander.  It went on to conclude that "[r]egrettably none of these services resulted in any noticeable change or improvement of [either parent's] ability to understand [Lara's needs]."  As a result, the court observed that "[n]either parent has any insight into why this child or any others were in custody and that there are any deficiencies that they themselves need to address."

---

[16]    *See, e.g.*, *Sean B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 251 P.3d 330, 338 (Alaska 2011) (concluding that OCS had engaged in reasonable efforts despite "difficulty bringing reunification plans into effect" and "breakdowns in communication"); *Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 310 P.3d 943, 954 (Alaska 2013) (finding reasonable efforts despite reunification efforts taking place over a short time and reduced visitation "partly because of OCS's limitations"); *Burke P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 162 P.3d 1239, 1247 (Alaska 2007) (affirming reasonable efforts even though they were "far from perfect" and OCS could have created case plans more quickly and better explained available services).

[17]    In cases to which ICWA applies, OCS is required to make "active efforts . . . to prevent the breakup of the Indian family." 25 U.S.C. § 1912(d). *See also Sandy B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 216 P.3d 1180, 1188 (Alaska 2009) ("OCS makes active efforts to reunite a family when it helps the parents develop the resources necessary to satisfy their case plans, but its efforts are passive when it requires the parents to perform these tasks on their own.").

When deciding whether termination of parental rights is in a child's best interests the superior court must place the child's interests above the parents'.[18] The court's decision is guided by the factors listed in AS 47.10.088(b), but the court exercises its discretion to determine how much weight to give to any factor.[19] It is clear that the superior court gave great weight to two factors: the amount of effort Alexander had expended to remedy the conduct that brought Lara into OCS custody and the history of his similar conduct. The superior court did not clearly err.

## V. CONCLUSION

The superior court's order terminating Alexander's parental rights to Lara is AFFIRMED.

---

[18]     *Joy B.*, 382 P.3d at 1165 (noting that " 'primary consideration' is . . . child's best interests").

[19]     *Chloe W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 336 P.3d 1258, 1271 (Alaska 2014).